## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DANIEL JOYCE, on behalf of himself and others similarly situated, | : : : | **Civil Action No.:** |
| Plaintiff, | : : | **COMPLAINT--CLASS ACTION** |
| v. | : : | **JURY TRIAL DEMANDED** |
| GLAUSIER KNIGHT JONES, PLLC, | : : | |
| Defendant. | : : | |

### Nature of Action

1.      This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq*., for the benefit of Florida consumers who have been the subject of debt collection efforts by Mankin Law Group, P.A. ("Defendant").

2.      Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.      As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—once explained, "[h]armful debt collection practices remain

a significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4.      Nearly half of the debt collection complaints received by the CFPB involve debt collectors' attempts to collect debts that consumers did not owe.[2]

5.      To combat this serious ongoing problem in the debt collection industry, the FDCPA requires debt collectors to send consumers "validation notices" at the outset of the relationship, which contain certain information about consumers' alleged debts and their rights with respect to those debts. 15 U.S.C. § 1692g(a).

6.      A debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id.* at § 1692g(a).

7.      As noted by the CFPB and the Federal Trade Commission, "this validation requirement was a 'significant feature' of the law that aimed to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Hernandez*, No. 14-15672, at 5 (quoting S. Rep. No. 95-382, at 4 (1977)).

8.      A debt collector does not comply with section 1692g "merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed *effectively* to the

---

[1]      *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf (last visited March 26, 2021).

[2]      *See* Bureau of Consumer Financial Protection, *Fair Debt Collection Practices Act — CFPB Annual Report 2020* at 14 (2020), https://files.consumerfinance.gov/f/documents/cfpb_fdcpa_annual-report-congress_03-2020.pdf (last visited March 26, 2021).

debtor." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (emphasis added).

9. To be effective, the notice must state the consumer's rights clearly and not be overshadowed or contradicted by other messages in the initial communication from the collector. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998) ("A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights.").

10. The FDCPA also prohibits false or misleading representations, and unfair or unconscionable means, in collecting or attempting to collect a debt. 15 U.S.C. §§ 1692e, 1692f.

11. Florida's state-law analog—the FCCPA—offers many of the same protections and more. *See* Fla. Stat., § 559.552 ("This part is in addition to the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.").

12. Among the FCCPA's prohibitions: claiming or attempting to enforce a debt that is known not to be legitimate. *Id.*, § 559.72(9).

13. This case centers on Defendant (i) failing to effectively provide the disclosures required by 15 U.S.C. § 1692g in its initial written communications to Florida consumers, or within five days thereafter; (ii) misleading consumers into believing their debt disputes or requests for validation would be futile; and (iii) attempting to collect illegitimate debts in the form of inflated interest charges due to Defendant having failed to properly credit consumers for payments already made.

**Parties**

14.     Daniel Joyce ("Plaintiff") is a natural person who at all relevant times resided in Pasco County, Florida.

15.     Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

16.     Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes— namely, assessments due to Twin Lakes Subdivision Association, Inc. ("Association") (the "Debt").

17.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

18.     Defendant is a law firm with its principal office in Hillsborough County, Florida.

19.     Defendant "dedicate[s] [its] practice to the representation of owner-controlled community associations, including homeowners, condominium, master, and professional associations."[3]

20.     Defendant touts itself as having "a wealth of knowledge and experience in the collection of delinquent community association assessments and fines," which includes its "experience handling thousands of collections matters" and "a proven track record of either recovering the property through foreclosure proceedings or securing full payment of delinquent amounts and fees through negotiated settlement."[4]

---

[3]     *See* https://www.glausierknightjones.com/ (last accessed March 26, 2021).

[4]     *See* https://www.glausierknightjones.com/blank (last accessed March 26, 2021).

21.     Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

22.     Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant treated the Debt as if it were in default from the time that Defendant acquired it for collection.

23.     Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

24.     Defendant represented to Plaintiff that it was a debt collector, as shown below.

25.     Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat., § 559.55(7).

### Jurisdiction and Venue

26.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

27.     Venue is proper before this Court under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this district and as Defendant has its principal place of business in this district.

28.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

### Factual Allegations

29.     In the first half of 2020, as a result of inadequate notice from the Association's property management company, Plaintiff missed his $159.00 quarterly assessment due April 1, 2020.

30.     Plaintiff similarly missed the $159.00 quarterly assessment due July 1, 2020 for the same reason.

31.     Plaintiff had not intended to withhold payment of these assessments; he failed to make payment by the deadline due to inadequate notice from the Association and its management company.

32.     Upon receiving notice in late July 2020, Plaintiff made a $159.00 payment on August 13, 2020.

33.     Plaintiff did not receive any further communications from the Association or its property management company regarding his assessments until, on or about October 15, 2020, Defendant sent a written communication to Plaintiff in connection with the collection of the Debt.

34.     A true and correct copy of the October 15, 2020 communication to Plaintiff is attached as Exhibit A.

35.     This October 15 communication to Plaintiff was the first communication Plaintiff received from Defendant.

36.     Plaintiff did not receive any other communication from Defendant within five days of the October 15 communication.

37.     Defendant's October 15 communication begins: "Please be advised that this office represents Twin Lakes Subdivision Association, Inc. (hereinafter the "Association")." Ex. A at 1.

38.     Defendant goes on to state that Plaintiff's "account with the Association is now substantially delinquent. Accordingly, this matter has been referred to this law firm for appropriate action." *Id.*

39.   After noting "a past due balance since April 2020," Defendant demands a "TOTAL AMOUNT DUE THROUGH OCTOBER 15, 2020" of $662.79, *after* deducting the $159.00 payment received on August 13, 2020:

| | |
|---|---|
| Assessments for 04/01/2020 through 10/01/2020 (3 payments at $159.00 per quarter) | $477.00 |
| Interest at 12%: | $12.49 |
| Costs Associated with the Preparation and Delivery of this Demand: | $7.30 |
| | |
| Administrative Fees: | $75.00 |
| Attorney's Fees: | $250.00 |
| Less payment received 08/13/2020 | ($159.00) |
| TOTAL AMOUNT DUE THROUGH OCTOBER 15, 2020 | $662.79 |

*Id.* at 1-2.

40.   Notably, the "TOTAL AMOUNT DUE" includes a 12% interest charge of $12.49 based upon total assessments of $477.00—three quarterly payments of $159.00 each for April 1, 2020 through October 1, 2020. *Id.* at 1.

41.   Defendant advises that, given the past due balance since April 2020, "any payments applied since that date have been applied to the oldest debt first, including any administrative fees, late fees and interest." *Id.*

42.   Defendant threatens:

Unless the entire sum is paid within forty-five (45) days of the date of this letter, we shall proceed with appropriate actions to protect the Association's interests, including, but not limited to the recording of a claim of lien. If a claim of lien is recorded against your lot to collect the amounts stated hereinabove, you will be responsible for the cost of recording the lien ($18.50) and certified mail ($6.59 per unit owner per address), plus additional attorneys' fees of approximately $250.00.

*Id.* at 2.

43.     Defendant then warns: "This is the only communication regarding this matter that you will receive prior to the recording of a claim of lien." *Id.*

44.     On the third page of its October 15 communication, in bold, capitalized letters, Defendant provides a "**NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. SECTION 1692**" in which Defendant identifies itself as a debt collector and states, *inter alia*: "**THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**." *Id.* at 3.

45.     About one month later, on November 12, 2020, Plaintiff made another payment on his account in the amount of $330.49—equivalent to two quarterly payments of $159.00 each, plus an additional $12.49 for the interest charge listed in the October 15 letter.

46.     Defendant nonetheless sent Plaintiff a second debt collection communication dated November 17, 2020.

47.     A true and correct copy of the November 17, 2020 communication to Plaintiff is attached as Exhibit B.

48.     Defendant's November 17 communication purports to provide validity of the Debt and encloses a "Homeowners Transaction History" showing the assessments and fines imposed upon Plaintiff's property, along with all payments received by the Association's management company up to, and including, November 16, 2020. *See* Ex. B at 1.

49.     The letter then states: "The enclosed Homeowner Transaction History does not show interest, costs of collection and attorney's fees, for which you are additionally responsible pursuant to the governing documents of the Association." *Id.*

50.     On the second page of its November 17 letter, Defendant provides a breakdown of the Debt still showing an interest charge of $12.49 (as from the October 15 letter) and the additional payment made by Plaintiff on November 12:

```
Assessments for 04/01/2020 through 11/01/2020.....................................$477.00
(3 payments at $159.00 per quarter)
Interest at 12%.............................................................................................$12.49
Costs.............................................................................................................$7.30
Administrative Fees.....................................................................................$75.00
*Attorney's Fees.........................................................................................$250.00
Less payment received 08/13/2020........................................................($159.00)
Less payment received 11/12/2020........................................................($330.49)
TOTAL AMOUNT DUE...............................................................................$332.30
*Reduced for Settlement Purposes Only
```

*Id.* at 2.

51.     Defendant then demands payment by December 18, 2020 of the supposed remaining balance of $332.30. *Id.*

52.     Defendant again advises in bold, capitalized letters: "**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THE UNDERSIGNED ATTORNEY IS ATTEMPTING TO COLLECT A DEBT OWED TO TWIN LAKES SUBDIVISION ASSOCIATION, INC. AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" *Id.*

### Class Action Allegations

53.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following three classes:

Overshadowing Class: All persons (a) with a Florida address, (b) to whom Glausier Knight Jones, PLLC mailed an initial debt collection communication not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that

stated: "This is the only communication regarding this matter that you will receive prior to the recording of a claim of lien."

Overcharge Class: All persons (a) with a Florida address, (b) to whom Glausier Knight Jones, PLLC mailed a debt collection communication not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that attempted to collect interest on a payment received prior to the date of the communication.

FCCPA Overcharge Class: All persons (a) with a Florida address, (b) to whom Glausier Knight Jones, PLLC mailed a debt collection communication not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the two years preceding the date of this complaint, (e) that attempted to collect interest on a payment received prior to the date of the communication.

54.     Excluded from the classes is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

55.     The classes satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

56.     The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

57.     The classes are ascertainable because they are defined by reference to objective criteria.

58.     In addition, upon information and belief, the names and addresses of all members of the proposed classes can be identified through business records maintained by Defendant.

59.     The classes satisfy Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the classes.

60.     To be sure, Plaintiff's claims and those of the members of the classes originate from the same standardized debt collection letters utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the classes.

10

61.    Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the classes, and he has retained counsel experienced and competent in class action litigation.

62.    Plaintiff has no interests that are contrary to or in conflict with the members of the classes that he seeks to represent.

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

64.    Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation could make it impracticable for the members of the classes to individually redress the wrongs done to them.

65.    There will be no unusual difficulty in the management of this action as a class action.

66.    Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the classes.

67.    Among the issues of law and fact common to the classes are:

a.  Defendant's violations of the FDCPA as alleged herein;

b.  whether Defendant is a debt collector as defined by the FDCPA;

c.  whether Defendant's statement that the debtor will receive no further communications prior to the recording of a claim of lien violates 15 U.S.C. § 1692g(b) and/or 15 U.S.C. § 1692e;

    d.   whether Defendant's attempted collection of interest on payments received prior to its collection communications violates 15 U.S.C. § 1692e(2)(A) and/or 15 U.S.C. § 1692f(1) and/or Fla. Stat. § 559.72(9);

    e.   the availability of statutory penalties; and

    f.   the availability of attorneys' fees and costs.

**Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(b)**

68.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 67 above.

69.    The FDCPA at 15 U.S.C. § 1692g(a) provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

70.    In turn, the FDCPA at 15 U.S.C. § 1692g(b) provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until

the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

(emphasis added).

71.     The manner by which Defendant conveyed the validation notice required by 15 U.S.C. § 1692g(a) was ineffective as its simultaneous warning that the October 15 letter "is the only communication regarding this matter that you will receive prior to the recording of a claim of lien," Ex. A at 2, was inconsistent with, and overshadowed and contradicted, the statutory validation notice.

72.     In the alternative, Defendant, through its October 15 letter, failed to explain an apparent, though not actual, contradiction that its letter creates regarding statutorily mandated disclosures that Defendant was required to provide to Plaintiff.

73.     Specifically, while Defendant included the validation notice required by 15 U.S.C. § 1692g(a) with the appropriate 30-day time-period for disputing the debt or requesting creditor information, in that same communication, Defendant advised that there would be no further communications to Plaintiff prior to the recording of a claim of lien absent his full payment of the debt within 45 days of the date of the letter. *See* Ex. A.

74.     Indeed, Defendant specifically threatened: "Unless the entire sum is paid within forty-five (45) days of the date of this letter, we shall proceed with appropriate actions to protect the Association's interests, including, but not limited to the recording of a claim of lien." *Id.* at 2.

75. What's more, Defendant also warned that the recording of a lien also would bring additional costs and attorney's fees. *See id.*

76. The October 15 letter overshadows the validation notice because the least sophisticated consumer is unlikely to understand, on the basis of the letter, that upon notifying Defendant of a dispute, debt collection activities would cease until Defendant obtains verification of the debt and a copy of such verification is mailed to the consumer.

77. To the contrary, the October 15 communication specifically states that "[t]his is the only communication regarding this matter that you will receive prior to the recording of a claim of lien." *Id.*

78. And the October 15 communication threatens: "Unless the entire sum is paid within forty-five (45) days of the date of this letter, we shall proceed with appropriate actions to protect the Association's interests, including, but not limited to the recording of a claim of lien." *See id.*

79. As a result, Defendant's October 15, 2020 communication is likely to discourage the least sophisticated consumer from exercising his statutory validation rights for fear of futility since Defendant told him he would receive no further communications from Defendant and since Defendant advised him that the next step would be to record a claim of lien—and thus incur additional costs and attorney's fees—absent full payment within 45 days.

80. "In this manner, the letter effectively overshadows the disclosed right to dispute by conveying an inaccurate message that exercise of the right does not have an effect that the statute itself says it has." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 992 (9th Cir. 2017).

81. Defendant thus violated 15 U.S.C. § 1692g(b).

82.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal Debt, and failed to effectively provide him statutorily mandated disclosures to which he was entitled.

83.     Section 1692g furthers the purpose of protecting debtors from abusive debt collection activity by requiring a debt collector who solicits payment from a consumer to provide that consumer a detailed validation notice, which allows the consumer to confirm that he owes the debt sought by the collector before paying it, and to appropriately chart his response to the collection activity.

84.     The content of Defendant's October 15, 2020 communication created a material risk of harm to the concrete interests Congress sought to protect in enacting the FDCPA.

85.     Specifically, when a consumer is informed on the one hand that he may dispute his debt or seek creditor information within 30 days of his receipt of a collection letter, but on the other hand that the collector will provide no further communications in the next 45 days before recording a lien on the consumer's property, he is left unsure of his rights and effectively discouraged from exercising those rights for fear of a lien.

86.     Here, in light of this contradictory language, Plaintiff was confused as to whether Defendant would respond to a written dispute, and even if so, whether it still would proceed with recording a lien against his property in spite of such a dispute.

87.     In this way, Defendant's demand for payment, threats over the recording of a lien, and admonishment that no further communications would be sent prior to the lien, all posed a risk of harm to Plaintiff's interests in determining how best to proceed with the Debt.

88.     Though Plaintiff disagreed with the amount of the Debt, he understood a debt dispute likely would be futile because Defendant indicated in its letter that it would not

communicate further with him, and that the only way to avoid a lien on his home was to pay the Debt in full.

89.     However, seeing no other options to address his concerns over the amounts being collected, Plaintiff submitted a debt dispute, anyway.

90.     What's more, Defendant's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016).

**Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e**

91.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 67 above.

92.     The FDCPA at 15 U.S.C. § 1692e provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

93.     While Defendant included the validation notice required by 15 U.S.C. § 1692g(a) in its October 15, 2020 communication, earlier in that same letter, Defendant clearly stated that it would not send any further communications prior to the recording of a lien 45 days later. *See* Ex. A at 2.

94.     This warning was buttressed by Defendant's demand for full payment of the Debt within 45 days, else it would "proceed with appropriate actions to protect the Association's interests," to include the recording of a lien with all the associated costs and attorney's fees. *Id.*

95.     Defendant's stated refusal to provide any further communications before the recording of a lien was deceptive and misleading given that the law specifically *requires* Defendant to so respond to any written disputes or written requests for information.

96.     Defendant's statement made it unlikely the least sophisticated consumer would understand that he could invoke his validation rights and still receive the requested information from Defendant as a matter of course.

97.     What's more, Defendant's statement, coupled with its simultaneous threat to record a lien and charge various costs and fees associated with that recording, made it unlikely the least sophisticated consumer would choose to exercise his validation rights, even presuming he fully understood the existence of such rights.

98.     By telling Plaintiff that its October 15, 2020 letter was "the only communication regarding this matter that you will receive prior to the recording of a claim of lien," Defendant used a false, deceptive, or misleading representation in connection with the collection of a debt.

99.     As a result, Defendant's October 15 letter violated the FDCPA at section 1692e.

100.    The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal Debt.

101.    And the violation of Plaintiff's right not to be the target of misleading debt collection communications is a concrete injury sufficient to confer standing.

102.    Indeed, the harm Plaintiff alleges here—being misled by a debt collector about the rights afforded him under the FDCPA—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent.

103.    And Plaintiff here was so misled because he understood from the October 15 letter that, while he could dispute the Debt, Defendant would not respond to any such dispute, and so Plaintiff's only option to avoid a lien being placed in his property was to pay the Debt in full, even though the amount of the Debt was incorrect, as further explained below.

**Count III: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A)**

104.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 67 above.

105.     The FDCPA at 15 U.S.C. § 1692e(2)(A) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*****

(2) The false representation of—

(A) the character, amount, or legal status of any debt;

106.     Defendant's October 15, 2020 and November 17, 2020 communications violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of the Debt.

107.     Specifically, on October 15, Defendant attempted to collect a debt that included an interest charge of $12.49 for allegedly past due quarterly assessments beginning in April 2020, despite simultaneously acknowledging a $159.00 payment previously made on August 13, 2020. *See* Ex. A at 1-2.

108.     Given Plaintiff's payment of $159.00 on August 13, two months *prior* to the mailing of Defendant's October 15 letter, Defendant's interest charge necessarily was inflated for calculating interest on supposed past due assessments for which a portion already had been paid before Defendant's initial collection attempt.

109.     Indeed, account statements dated April 30, 2020, May 31, 2020, and June 30, 2020 each show a "Current Account Balance" of $159.00—with no mention of any interest charge.

18

110.    True and correct copies of the April 30, May 31, and June 30 account statements are attached as composite Exhibit C.

111.    Then, on November 17, Defendant again attempted to collect a debt that included the same interest charge of $12.49 for the same allegedly past due quarterly assessments beginning in April 2020, despite acknowledging receipt of *two* separate payments, totaling $489.49, prior to the mailing of its letter. *See* Ex. B at 2.

112.    Defendant never explains in either collection letter how, or when, interest charges began to accrue on Plaintiff's allegedly past due assessments.

113.    Notably, Defendant acknowledges that none of the Association's documentation to Plaintiff included an interest charge. *See* Ex. B at 1 ("The enclosed Homeowner Transaction History does not show interest, costs of collection and attorney's fees, for which you are additionally responsible pursuant to the governing documents of the Association."); *accord* Ex. C.

114.    Besides the quarterly assessments, the only additional charge appearing on the Homeowner Transaction History, dated November 16, 2020 and attached to Defendant's November 17 letter, is $75 for "Collection Income to Attorney" with a "Posting Date" of October 9, 2020. *See* Ex. B at 3.

115.    This comports with Plaintiff's April, May, and June account statements reflecting no interest charges. *See* Ex. C.

116.    If the Association had not applied an interest charge to Plaintiff's account until it sent the account to Defendant for collection in October 2020, then, at a minimum, Defendant should not have charged interest on the amount for which Plaintiff already had made a payment in August 2020, two months *before* Defendant's initial communication in October 2020.

117.     On the other hand, if the Association applied an interest charge to Plaintiff's account as soon as it allegedly became delinquent following his missed April 1, 2020 payment—even though its own documentation states otherwise, *see* Ex. C—then Plaintiff's subsequent payments in August 2020 and November 2020 should have been applied "first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment," as Defendant makes clear in its October 15 and November 17 communications. *See* Ex. A at 2; Ex. B. at 1.

118.     In other words, Plaintiff's $159.00 payment in August 2020 and $330.49 payment in November 2020 should have been applied to interest charges before any others.

119.     But this necessarily did not happen, as Defendant attempted to collect the same $12.49 in interest on October 15 (after Plaintiff's August 13 payment) and on November 17 (after Plaintiff's additional payment on November 12).  *See* Ex. A; Ex. B.

120.     So, even assuming the full $12.49 interest charge is justified—which Plaintiff disputes, and which Defendant provides no explanation for its calculation and the Association's own records reflect no interest charge whatsoever, *see* Ex. C—that charge nonetheless should have been satisfied with Plaintiff's $159.00 payment on August 13 or his $330.49 payment on November 12.

121.     Yet, Defendant still attempted to collect the same $12.49 in interest in its November 17 letter. *See* Ex. B at 2.

122.     What's more, by email communication to Plaintiff dated November 20, 2020, Karen Mason, President of the Association, agreed on behalf of the Association to waive any interest charges or late fees on Plaintiff's account.

123.    A true and correct copy of Ms. Mason's November 20 email to Plaintiff is attached as Exhibit D.

124.    Thus, as of November 20, any interest charge that might have accrued on Plaintiff's account—in what amount, and at what time, still is not clear—no longer existed.

125.    However, on a Homeowner Transaction History dated January 15, 2021 that Defendant provided to Plaintiff on the same date, the $12.49 interest charge remained on Plaintiff's account, with no corresponding credit for the Association's waiver.

126.    A true and correct copy of the January 15, 2021 Homeowner Transaction History is attached as Exhibit E.

127.    Thus, Defendant improperly inflated the Debt in several ways—by collecting an improper interest charge from the beginning, and then by not crediting his account after the Association's waiver of such interest and other charges.

128.    By seeking to collect, collecting, and retaining such inflated amounts, Defendant falsely represented the character, amount, or legal status of the Debt, in violation of 15 U.S.C. § 1692e(2)(A).

129.    The harm suffered by Plaintiff is particularized in that the violative debt collection letters at issue were sent to him personally and regarded his personal Debt.

130.    And the violation of Plaintiff's right not to be the target of misleading and inflated debt collection communications is a concrete injury sufficient to confer standing.

131.    Indeed, the harm Plaintiff alleges here—being misled by a debt collector as to the true amount of his alleged debt and induced to pay an improperly inflated amount—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent.

132.   What's more, Plaintiff suffered actual damages in the form of his making several payments on his account—one on August 13, 2020 for $159.00, another on November 12, 2020 for $330.49, and another on January 12, 2021 for $316.31—a portion of which Defendant applied to the $12.49 interest charge levied on Plaintiff's account, which included inflated interest to which neither Defendant nor its client was entitled, and which the Association expressly disavowed by email dated November 20, 2020.

133.   Thus, Defendant's false and misleading conduct caused Plaintiff to pay money that he did not owe.

**Count IV: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1)**

134.   Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 67 above.

135.   The FDCPA at 15 U.S.C. § 1692f(1) provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*\*\*\*\*

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

136.   Defendant's October 15, 2020 and November 17, 2020 communications violated 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect, or attempt to collect, Plaintiff's alleged Debt.

137.   As explained above, Defendant attempted to collect, and did collect, a debt that included an interest charge of $12.49 for allegedly past due quarterly assessments beginning in April 2020, despite acknowledging several payments made in August 2020 and November 2020. *See* Ex. A at 1-2; Ex. B at 2.

138.    Defendant did so despite the Association's records never reflecting any interest charges on Plaintiff's account. *See* Ex. C (April, May, and June 2020 account statements); *see also* Ex. B at 3 (November 16, 2020 Homeowner Transaction History).

139.    As a result of Plaintiff's payments on August 13 and November 12, the monies collected should have applied first and foremost to any interest charges outstanding—to the extent such charges even existed—as Defendant acknowledges in its own collection communications and is consistent with Florida law. *See* Ex. A at 1, Ex. B at 1.

140.    Nonetheless, despite Plaintiff already having paid $489.49 by November 12, Defendant's November 17 letter still attempts to collect $12.49 in interest charges. Ex. B at 2.

141.    Moreover, the Association later agreed to waive any interest or other charges assessed to Plaintiff's account. *See* Ex. D.

142.    But Defendant never credited Plaintiff's account for the $12.49 interest charge it already had collected, as demonstrated by the January 15, 2021 Homeowner Transaction History. *See* Ex. E.

143.    Defendant thus attempted to collect, did collect, and retained, falsely inflated debt amounts owing to inflated interest charges that should not have been collected to begin with, and which should have been relinquished following the Association's waiver of any interest charges.

144.    By doing so, Defendant collected, or attempted to collect, an amount not expressly authorized by agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1).

145.    The harm suffered by Plaintiff is particularized in that the violative debt collection letter at issues were sent to him personally and regarded his personal Debt.

146.    And the violation of Plaintiff's right not to be the target of misleading and inflated debt collection communications is a concrete injury sufficient to confer standing.

147.    Indeed, the harm Plaintiff alleges here—being subjected to attempted collection efforts for false, inflated amounts, and being induced to pay such amounts—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent.

148.    What's more, Plaintiff suffered actual damages in the form of his making several payments on his account—one on August 13, 2020 for $159.00, another on November 12, 2020 for $330.49, and another on January 12, 2021 for $316.31—a portion of which Defendant applied to the $12.49 interest charge levied on Plaintiff's account, which included inflated interest to which neither Defendant nor its client was entitled, and which the Association expressly disavowed by email dated November 20, 2020.

149.    Thus, Defendant's unfair and unconscionable conduct caused Plaintiff to pay money that he did not owe.

### Count V: Violation of Fla. Stat., § 559.72(9)

150.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 67 above.

151.    The FCCPA at § 559.72(9) provides:

In collecting consumer debts, no person shall:

* * * *

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

152.    The October 15 and November 17, 2020 communications were sent in connection with an attempt to collect the Debt from Plaintiff.

153.    At the time Defendant acquired the Debt for collection, it was, upon information and belief, considered to be in default.

154.    By attempting to collect interest that Plaintiff did not owe, Defendant claimed, or attempted to enforce, a debt that it knew or should have known was not legitimate.

155.    To be sure, Defendant attempted to collect, and did collect, a debt that included an interest charge of $12.49 for allegedly past due quarterly assessments beginning in April 2020, despite acknowledging several payments made in August 2020 and November 2020. *See* Ex. A at 1-2; Ex. B at 2.

156.    Defendant did so despite the Association's records never reflecting any interest charges on Plaintiff's account. *See* Ex. C (April, May, and June 2020 account statements); *see also* Ex. B at 3 (November 16, 2020 Homeowner Transaction History).

157.    As a result of Plaintiff's payments on August 13 and November 12, the monies collected should have applied first and foremost to any interest charges outstanding—to the extent such charges even existed—as Defendant acknowledges in its own collection communications and is consistent with Florida law. *See* Ex. A at 1, Ex. B at 1.

158.    Nonetheless, despite Plaintiff already having paid $489.49 by November 12, Defendant's November 17 letter still attempts to collect $12.49 in interest charges. Ex. B at 2.

159.    Moreover, the Association later agreed to waive any interest or other charges assessed to Plaintiff's account. *See* Ex. D.

160.    But Defendant never credited Plaintiff's account for the $12.49 interest charge it already had collected, as demonstrated by the January 15, 2021 Homeowner Transaction History. *See* Ex. E.

161.    As a result of its repeated collection efforts and refusal to relinquish that portion of Plaintiff's payments applied to the improper interest charges, Defendant violated Fla. Stat., § 559.72(9).

162.     The harm suffered by Plaintiff is particularized in that the violative debt collection letters at issue were sent to him personally, regarded his personal Debt, and wrongly claimed or attempted to enforce a debt that Plaintiff did not owe, and which therefore was not legitimate.

163.     Likewise, Defendant's actions created a concrete harm in that they constituted debt collection practices that the Florida legislature specifically prohibited, and those actions created the risk that Plaintiff would pay monies he did not owe.

164.     In fact, this very risk materialized once Plaintiff made payments on the Debt that necessarily included inflated interest charges that he did not owe.

165.     What's more, Plaintiff suffered actual damages in the form of his making several payments on his account—one on August 13, 2020 for $159.00, another on November 12, 2020 for $330.49, and another on January 12, 2021 for $316.31—a portion of which Defendant applied to the $12.49 interest charge levied on Plaintiff's account, which included inflated interest to which neither Defendant nor its client was entitled, and which the Association expressly disavowed by email dated November 20, 2020.

166.     Thus, Defendant's collection of a debt it knew or should have known to be illegitimate caused Plaintiff to pay money that he did not owe

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

    A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    B.  Adjudging and declaring that Defendant violated 15 U.S.C. §§ 1692g(b), 1692e, 1692e(2)(A), and 1692f(1);

    C.  Adjudging and declaring that Defendant violated Fla. Stat., § 559.72(9);

D.  Awarding Plaintiff and members of the classes statutory damages pursuant to 15 U.S.C. § 1692k and Fla. Stat., § 559.77(2);

E.  Awarding Plaintiff and members of the classes actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k and Fla. Stat., § 559.77(2);

F.  Enjoining Defendant from future violations of 15 U.S.C. §§ 1692g(b), 1692e, 1692e(2)(A), and 1692f(1), and Fla. Stat., § 559.72(9), with respect to Plaintiff and the classes;

G.  Awarding Plaintiff and members of the classes their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k, Fla. Stat., § 559.77(2), and Rule 23 of the Federal Rules of Civil Procedure;

H.  Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

I.  Awarding other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff is entitled to, and hereby demands, a trial by jury.

Dated:  March 26, 2021                    Respectfully submitted,


                                          /s/ *Jesse S. Johnson*
                                          James L. Davidson
                                          Florida Bar No. 723371
                                          Jesse S. Johnson
                                          Florida Bar No. 69154
                                          Greenwald Davidson Radbil PLLC

7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed classes*